Robert Gralewski, Esq.
CA Bar ID: 196410
KIRBY McINERNEY, LLP
600 B Street, Suite 2110
San Diego, California 92101
Telephone: 619-784-1442
Facsimile: 212-751-2540
Email: bgralewski@kmllp.com

*Counsel for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEAH C. RIDGWAY and AUTUMN N. MEIGS, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>FLO HEALTH, INC.,<br><br>       Defendant. | Case No.: 3:21-cv-03031<br><br>**COMPLAINT**<br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Leah C. Ridgway and Autumn N. Meigs (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, through their undersigned attorneys assert the following against Defendant Flo Heath, Inc. (hereinafter "Flo Health" or "Defendant"), based upon personal knowledge, where applicable, information and belief, and investigation by their counsel:

### INTRODUCTION

1.     Flo Health developed and owns the Flo Period & Ovulation Tracker (hereafter "Flo App" or "App"), which is one of the most popular health and fitness mobile applications for women available on the market with over 165 million users.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1

2.      The Flo App uses artificial intelligence and algorithms to provide advice and

2    assistance for women by serving as a period tracker, ovulation calendar, pregnancy guide, and

3    wellness and lifestyle tracker.

4            3.      The Flo App is one of the most downloaded health and fitness apps in the Apple

5    App Store.[1] The Flo App has over 38 million monthly active users, including more than 16

6    million users in the United States.

7            4.      For the millions of users – including Plaintiffs and the class they represent – to

8    use the Flo App, they were required to share personally identifiable information, such as their

9    name, email address, date of birth, intimate details about their sex lives and sexual health

10   including menstruation cycle, physical well-being, mental well-being, and more. Flo Health

11   tells their users that by providing this information, the Flo App will help predict users' periods,

12   provide an ovulation calendar, serve as a period tracker, aid in pregnancy, and provide health

13   assistance, permitting users to "take full control of [their] health."

14           5.      Flo Health's privacy policies assured its users that Flo Health would not share

15   users' personal information, including their private and intimate health data, with anyone. Flo

16   Health publicly boasted that its users' "[p]rivacy in the digital age is of utmost importance. Flo

17   provides a secure platform for millions of women globally"[2]

18           6.      Flo Health's Privacy Policy states, in all capital letters, that it "WILL NOT

19   TRANSMIT ANY OF YOUR PERSONAL DATA TO THIRD PARTIES UNLESS

20   OTHERWISE IS PROVIDED BY THIS PRIVACY POLICY. PLEASE NOTE THAT WE

21   WILL NEVER SHARE YOUR EXACT AGE OR ANY DATA RELATED TO YOUR

22   HEALTH WITH ANY THIRD PARTIES."[3]

23

24   [1] The Flo App was named "App of the Day in March 2018[.]" FLO HEALTH, INC., under
     *Recognition* (last visited Feb. 2, 2021), https://flo.health/.
25   [2] *About Us*, under *What Flo stands for*, FLO HEALTH, INC. (last visited Feb. 2, 2021),
     https://flo.health/our-mission.
26   [3] *Privacy Policy (archived)*, FLO HEALTH, INC. (effective July 17, 2019) (emphasis
     removed), https://flo.health/privacy-policy-archived/july-17-2019; *Privacy Policy (archived)*,
27   FLO HEALTH, INC. (effective March 19, 2019), https://flo.health/privacy-policy-
     archived/march-19-2019.
28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

7.     Flo Health also agreed in its Privacy Policy that it would not share the following with third parties: survey results; information regarding a user's marked cycles; pregnancy; symptoms; notes; or information about the articles viewed by its users.

8.     With respect to any information sharing with third parties at all, in its Privacy Policy, Flo Health agreed to limit the flow and use of this information to instances where necessary or in conjunction with providing services to the user.

9.     Plaintiffs and the Class, relying on Flo Health's repeated assurances that their health data would be protected and not disclosed, agreed to provide their intimate health details.

10.     Flo Health violated its own Privacy Policy by disclosing its users' intimate health data to third parties, without their consent, who were free to use this data for their own purposes.[4]

11.     If Plaintiffs and the Class had known that Flo Health would share their intimate health details, they would not have used the Flo App.

12.     This action is brought by Plaintiffs and the Class of Flo App users that were subject to Flo Health's undisclosed, unfair, and unlawful data-sharing policies. Flo Health used Plaintiffs' personal, confidential, and sensitive health information for a purpose materially different than that authorized by Plaintiffs and the Class. Flo Health did not disclose to Plaintiffs, or seek their consent, to sell or otherwise share their personal, confidential, and sensitive health data to third parties. Plaintiffs and the Class bring the claims alleged herein, pursuant to state and federal laws, to obtain injunctive relief, sequester of illegally obtained information, and damages.

---

[4] Sam Schechner and Mark Secada, *You Give Apps Sensitive Personal Information. Then They Tell Facebook*, WALL STREET JOURNAL (Feb. 22, 2019 11:07 AM), https://www.wsj.com/articles/you-give-apps-sensitive-personal-information-then-they-tell-facebook-11550851636.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**PARTIES**

**Plaintiffs**

13.    Plaintiff Leah C. Ridgway ("Ridgway" or "Ms. Ridgway") is a resident of Franklin County, Ohio. Plaintiff Ridgway has downloaded, installed, input data into, used, and continues to use the Flo App. Ms. Ridgway brings this action on behalf of herself and all others similarly situated.

14.    Plaintiff Autumn N. Meigs ("Meigs" or "Ms. Meigs") is a resident of Stark County, Ohio. Plaintiff Meigs has downloaded, installed, input data into, used, and continues to use the Flo App. Ms. Meigs was a minor when she began using the Flo App. Ms. Meigs brings this action on behalf of herself and all others similarly situated.

**Defendant Flo Health Inc ("Flo")**

15.    Defendant Flo Health, Inc. is a Delaware corporation, headquartered at 541 Jefferson Avenue, Suite 100, Redwood City, California 94063-1700.

**JURISDICTION AND VENUE**

16.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members defined below, and minimal diversity exists because a significant portion of putative class members are citizens of a state different from that which Defendant is a citizen of.

17.    This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 since this suit is brought under the laws of the United States, i.e., the Stored Communications Act, 18 U.S.C. § 2702, et seq., and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining state common law and statutory claims, as these state law claims are part of the same case or controversy as the federal statutory claim over which the Court has original jurisdiction.

18.    This Court has personal jurisdiction over Defendant because it transacts business in the United States, including in this District, has substantial aggregate contacts with the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

United States, including in this District, engages and is engaging in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed itself of the laws of the United States.

19. This Court has specific personal jurisdiction over Flo Health, Inc. because it consented to jurisdiction in this District in its Terms of Use, which states:

> Any dispute arising from this Agreement shall be governed by the laws of the State of California without regard to its conflict of law provisions. **SOLE AND EXCLUSIVE JURISDICTION FOR ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE IN AN APPROPRIATE STATE OR FEDERAL COURT LOCATED IN SAN FRANCISCO COUNTY, STATE OF CALIFORNIA . . . .**[5]

20. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), (c), and (d) because Flo Health transacts business in this District and a substantial portion of the events giving rise to the claims occurred in this District.

## INTRADISTRICT ASSIGNMENT

21. Intradistrict Assignment: A substantial part of the events and omissions giving rise to the violations of law alleged herein occurred in the County of San Francisco, and as such, this action may properly be assigned to the San Francisco or Oakland divisions of this Court pursuant to Civil Local Rule 3-2(c).

## ALLEGATIONS APPLICABLE TO ALL COUNTS

### A. Flo Health, Inc. Platform

22. Flo Health was founded and launched in 2015 by a group of mobile app developers based in Minsk, Belarus. The Flo App uses artificial intelligence and algorithms to accurately predict and track female reproductive cycles.

23. The Flo App requires its users to input a significant amount of intimate and personal information, including: history of contraceptive use and methods; vaginal discharge; diseases; weight, menstrual pains, and other physical or mental symptoms; and mood swings and sexual activity (including the users' sexual desire levels, experience of pain during sex, or

---

[5] *Terms of Use*, under *Miscellaneous*, FLO HEALTH, INC. (effective Feb. 5, 2020) (emphasis in original), https://flo.health/terms-of-service.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

use of contraception). Users can also write "personal notes" to provide supplementary information to the Flo App. The Flo App also includes social media features and a community section that allows users to anonymously ask and answer questions related to their personal health.

24.     In 2017, Flo Health gained attention and recognition by working with the United Nations Population Fund as part of its "Let's Talk About it. Period." campaign, which was designed to increase public awareness of social and health issues related to menstruation. Since then, the Flo App continuously attracted more downloads and active users.

25.     Flo App is one of, if not the most popular women's health and fitness applications available on the market. More than 165 million users have downloaded the Flo App. In 2019, it was the most downloaded health and fitness app in the Apple App store. Since 2016, more than 16 million users across the United States have downloaded the Flo App, which also has been rated #1 period tracker in the United States based on active audience.

26.     With each new user, Flo Health continued to collect intimate health details from its users, and continued to promise and assure those users that their personal information and health data would remain private and confidential and not disclosed to third parties.

27.     Defendant instructs its millions of users to enter extensive amounts of personal information into the Flo App including their name, email address, date of birth, and place of residence, and encourages users to "[l]og your menstruation days in a handy period calendar, ovulation and fertility tracker, schedule menstrual cycle reminders, record moods and PMS symptoms, use a due date calculator, follow a pregnancy calendar . . . ." By doing so, Defendant assures users they can "take full control of [their] health."

**B. Flo Health, Inc. Provided Deceptive Statements That Led Reasonable Users to Believe That They Have Control over Their Personal Information and Data**

28.     In February 2019 the *Wall Street Journal* published a report revealing that Flo Health shares users' intimate health data, including when a user is having her period or intends to become pregnant, with third parties such as Facebook and Google.[6]

29.     From 2017 to 2019, Flo App users were led to believe that their private health data would be kept a secret. The Defendant continually promised that the Flo App would maintain its users' private health information. Flo Health explained that it "may share certain" personal data with third parties *only* for operating and servicing the Flo App. The privacy policies further proclaimed that any information shared with third parties "exclud[ed] information regarding your marked cycles, pregnancy, symptoms, notes and other information that is entered by you and that you do not elect to share[.]"[7]

30.     Further investigations revealed that between at least 2016 and 2019, Flo Health entered into contracts with numerous third-party firms to provide various marketing and analytics services for the Flo App. These third-party advertisers and marketing firms, unbeknownst to the Flo App users and in contravention of Flo Health's stated policies and representations, purchased access to users' intimate health data. These firms include, but may not be limited to, Facebook, Google, AppsFlyer Ltd., and Flurry, Inc. Flo Health did not contractually limit how these third parties could use this data.

31.     Although Defendant, in its Privacy Policy, identified some of these third-party firms as potentially receiving some of users' information, Flo Health confirmed that these third

---

[6] Sam Schechner and Mark Secada, *You Give Apps Sensitive Personal Information. Then They Tell Facebook*, WALL STREET JOURNAL (Feb. 22, 2019 11:07 AM), https://www.wsj.com/articles/you-give-apps-sensitive-personal-information-then-they-tell-facebook-11550851636.

[7] *Privacy Policy (archived)*, under *Disclosure of Information, Information We Share with Third Parties*, FLO HEALTH, INC. (effective Aug. 28, 2017), https://flo.health/privacy-policy-archived/aug-28-2017.

parties would only receive "non-personally identifiable information," or "[p]ersonal Data like device identifiers[,]" or "device identifiers[.]"[8]

### 1. Users Were Encouraged to Share Private and Personal Information

32. The Flo App asked its users to answer a number of questions regarding: menstruation cycle; type of cycle; discomfort; mood swings; birth control methods; reproductive history; sexual history; relationships; and other personal information. The Flo App was deliberate in its design to request users input their personal, private, and intimate lifestyle-related information in order – as Flo Health explains it – to gain better services and results.

33. The Flo App asks users to input over 30 responses to intimate, personal questions like those that follow, while setting up the Flo App for the first time:

   a.     How long have you been trying to conceive?

   b.     Do you have any reproductive diseases?

   c.     What medication are you currently taking? How often?

   d.     How often do you have sex?

   e.     Do you experience any pain during sex?

   f.     How often do you masturbate?

   g.     Is it easy for you to orgasm?

34. When users log onto the Flo App, they are encouraged to keep their personal and intimate health information up to date by telling users to "stay on top of [their] health." The Flo App convinces users, in part, to regularly input this private data, and gains users' trust by assuring users that "[l]ogging symptoms helps Flo detect possible imbalances in [users'] bod[ies] and advi[s]e[s] [users] to see a doctor."

35. The Flo App asks users to "[l]og your menstruation days in a handy period calendar, ovulation and fertility tracker, schedule menstrual cycle reminders, record moods and PMS symptoms, use a due date calculator, follow a pregnancy calendar . . . ." Additional

---

[8] *Privacy Policy (archived)*, under *Sharing you* [sic] *personal data and information*, FLO HEALTH, INC. (effective May 25, 2018), https://flo.health/privacy-policy-archived/may-25-2018.

information requested is also sensitive and includes information regarding a user's sexual activity, sex drive, mood, symptoms, vaginal discharge, and more.

36. Encouraged to do so, and after receiving promises of confidentiality, Flo App's millions of users regularly provided Flo Health with their private and intimate health data.

37. At the same time Flo Health's Privacy Policy promised that third parties would only be able to obtain "non-personally identifiable information," "[p]ersonal Data like device identifiers[,]" or "device identifiers," the Privacy Policy did not state or otherwise indicate that third parties would have access to the records in the Custom App Events (containing intimate health data) registered by the Flo App.[9]

38. Between 2017 to 2019, Flo App users were led to believe that their private and personal data would be kept private and confidential, including by Defendant explicitly stating:

> We use Facebook Analytics and Google Analytics tools to track installs of our App. Normally, Facebook and Google collect **only non-personally identifiable information**, though some **Personal Data like device identifiers** may be transferred to Facebook. . . . **Fabric may use device identifiers** that are stored on your mobile device and allow us to analyze your use of the App in order to improve our app feature.[10]

## C. Flo Health, Inc. Knowingly and Willfully Disclosed Millions of Users' Private Health and Personal Information to Facebook, Google, and Other Third Parties

39. Flo Health made representations to its users that third parties would not receive users' survey results or "information regarding your marked cycles, pregnancy, symptoms, notes and other information entered by [users][.]"[11] Notwithstanding these representations, Flo Health knowingly and willfully disclosed its users' intimate health data to third parties.

---

[9] *Privacy Policy (archived)*, FLO HEALTH, INC. (effective May 25, 2018), https://flo.health/privacy-policy-archived/may-25-2018.

[10] Complaint, *In the Matter of FLO HEALTH, INC.*, FEDERAL TRADE COMMISSION, No. 1923133, 3 (emphasis in original), https://www.ftc.gov/system/files/documents/cases/flo_health_complaint.pdf.

[11] *Privacy Policy (archived)*, under *Sharing you* [sic] *personal data and information*, FLO HEALTH, INC. (effective May 25, 2018), https://flo.health/privacy-policy-archived/may-25-2018.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

40.     Flo Health specifically entered into these contracts with third parties to disclose users' personal and sensitive health data without Plaintiffs and the Class' knowledge and/or consent, in violation of their privacy rights and federal law.

41.     Adding insult to injury, Flo Health did not contractually limit the manner, or the duration, these third parties could use Plaintiffs' and the Class' intimate health details.

42.     The Flo App, like most applications, has "Standard App Events" and "Custom App Events" each time a user interacts with the application. Standard App Events are records of routine app functions, such as launching or closing the app. Custom App Events are records of unique user interactions in the app. As an example, when a Flo App user enters her personal information such as menstruation dates, sleep cycles, or other data, that is considered a Custom App Event.

43.     Flo App Custom App Events are recorded and stored. Flo Health makes use of these records to improve the Flo App's functionality and to identify features that are of interest to users.

44.     Flo Health intentionally designed the Custom App Events of the Flo App to have a descriptive title. As an example, when a user enters the week of their pregnancy into the app's calendar, the Flo App records the Custom App Event "R_PREGNANCY_WEEK_CHOSEN." When a user selects a feature for menstruation reminders in the "wanting to get pregnant branch" of the app, the Flo App records the Custom App Event "P_ACCEPT_PUSHES_PERIOD."

45.     Between 2017 to 2019, Defendant repeatedly made representations that it would preserve users' private heath data as such, and would refrain from disclosing it to third parties. These representations were not true. Defendant built software development kits ("SDKs") into the Flo App. The SDKs were provided by the third-party companies such as Facebook, Flurry, Fabric, AppsFlyer, and Google. These SDKs collected identifiers and Custom App Events of the millions of Flo App users.

46.     The descriptive titles of the Flo App Custom App Events, such as Pregnancy Week, disclosed millions of users' intimate health information to third parties. This disclosure of private information directly contradicted Defendant's privacy policies.

47.     Despite Flo Health's many and repeated assurances that it would not disclose its users' intimate health information, Flo Health spent years doing just that. Specifically, Defendant disclosed Custom App Event information to:

        a.     Facebook from June 2016 to February 2019;

        b.     Flurry from June 2016 to February 2019;

        c.     Fabric from November 2016 to February 2019;

        d.     AppsFlyer from May 2018 to February 2019; and

        e.     Google from September 2018 to February 2019.

**D.  Flo Health, Inc. Willfully Failed to Obtain Users' Consent**

48.     Between 2017 and 2019, Flo Health made repeated representations to its users that it would keep their information private. Flo Health assured its users that their data would only be used in order to provide and improve Flo App's services.

49.     Flo Health's representations and promises made in its Privacy Policy led millions of its users to entrusting Flo Health with their intimate information regarding their physical and mental health, romantic relationships, sex life, and lifestyle preferences.

50.     Flo Health's Privacy Policy that was effective between August 28, 2017 and February 19, 2019 stated that Flo Health "may share certain" personal data with third parties, but only "information that is reasonably necessary to perform their work" which involves "supply[ing] software applications, web hosting and other technologies for the App."[12]

51.     The same Policy stated that any information shared with third parties "exclud[ed] information regarding your marked cycles, pregnancy, symptoms, notes and other information

---

[12] *Privacy Policy (archived)*, under *Disclosure of Information, Information We Share with Third Parties*, FLO HEALTH, INC. (effective Aug. 28, 2017), https://flo.health/privacy-policy-archived/aug-28-2017; *Privacy Policy (archived)*, under *Sharing you* [sic] *personal data and information*, FLO HEALTH, INC. (effective May 25, 2018), https://flo.health/privacy-policy-archived/may-25-2018.

that is entered by you and that you do not elect to share[.]"[13] The Policy goes on to state that third parties could not use Flo App users' personal information "for any other purpose except to provide services in connection with the App."[14]

52. Flo Health assured it users that to the extent their information was disclosed to third parties, it would restrict how third parties could use Flo App users' personal and private data. This, too, was not true. Defendant agreed to, without obtaining its users' consent, the third parties' terms of service, which violated Flo Health's own Privacy Policy:

a. Facebook's Business Tools Terms stated: "**You will not share Customer Data with us that you know or reasonably should know . . . includes health**, financial information, or other categories of sensitive information (including any information defined as sensitive under applicable law)." Those terms also stated: "We use [aggregated] Event Data to personalize the features and content (including ads and recommendations) we show people on and off our Facebook Company Products. . . . We may also use Event Data . . . for research and development purposes, and to . . . improve the Facebook Company Products." That "Event Data" includes Custom App Events.

b. Google Analytics' Terms of Service stated: "Google and its wholly owned subsidiaries may retain and use . . . information collected in [Flo Health's] use of the service."

c. AppsFlyer's Terms of Use stated: "You hereby allow AppsFlyer to collect, store, use and process Customer Data," where "Customer Data" was defined to include "data concerning the characteristics and activities" of app users. Those terms also stated "**AppsFlyer strictly prohibits you from using the Services to collect or otherwise enable the collection of any Restricted Data. You hereby warrant that you shall not configure the Codes or Services to collect**

---

[13] *Id.*
[14] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

any Restricted Data through the Services." The Terms of Use defined "Restricted Data" to include "**any health information.**"

     d.     The Fabric Software and Services Agreement stated: "[Flo Health] acknowledges and agrees that Google [Fabric] may use Usage Data for its own business purposes," where "Usage Data" was defined to mean "all information, data and other content, not including any [identifying data], received by Google related to [Flo Health]'s use of the Fabric Technology.[15]

53.    At least one of these third parties, used Flo Health's Custom App Event data for its own development and research purposes.

54.    In disclosing the Custom App, Flo Health continuously violated the terms of its own Privacy Policy.

**E.  Plaintiffs and the Class Have the Reasonable Expectation of Privacy**

55.    Plaintiffs and the Class have a reasonable expectation of privacy in their personal, intimate health data, which Flo Health collected, stored, and disclosed to third parties.

56.    The disclosure of intimate, personal data from millions of individuals, as Flo Health has done here, violates expectations of privacy that have been established as general social norms.

57.    A recent study performed by *Consumer Reports* illustrated that 92% of Americans believe that internet companies and websites ought to be required to obtain consent before selling or sharing users' data.[16] The same percentage also feels that internet companies and websites should be required to offer consumers a complete list of the data and information that has been collected about them.[17] Moreover, according to a study by Pew Research, the majority

---

[15] *See* Complaint, *In the Matter of FLO HEALTH, INC.*, FEDERAL TRADE COMMISSION, No. 1923133, 4-5 (emphasis in original), https://www.ftc.gov/system/files/documents/cases/flo_health_complaint.pdf.
[16] *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety/.
[17] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

of Americans, approximately 79%, worry about how data is collected about them by companies.[18]

58.     Flo Health claimed to be acting consistently with consumer expectations by promising not to share their personal and intimate health data with third parties, and further promising that the limited data that it might share would only be used to provide or enhance the Flo App's services.

59.     Notwithstanding the promises and assurances made, Flo Health in fact disclosed its users' intimate health data to third parties without their consent, and allowed the third-party companies to use this information for any purpose. This constitutes a violation of Plaintiffs' and Class members' privacy interests, as demonstrated by the outrage users conveyed when they learned that their intimate health data was disclosed by Flo Health to third parties. For example, as one user stated: "Why would you EVER think it is ok to share that personal, private information with a third [sic] party?"

60.     Alice Berg, a 25-year-old student, told the Wall Street Journal, "I think it's incredibly dishonest of them that they're just lying to their users especially when it comes to something so sensitive."[19]

61.     Following the Wall Street Journal's reporting, at least 100 Flo App users asked Flo Health to delete their accounts and/or data, or told Flo Health they were deleting, or would be deleting, the Flo App.

---

[18] Brooke Auxier, Lee Rainie, Monica Anderson, Andrew Perrin, Madhu Kumar & Eric Turner, *Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over Their Personal Information*, PEW RESEARCH CENTER (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/.

[19] Sam Schechner and Mark Secada, *You Give Apps Sensitive Personal Information. Then They Tell Facebook*, WALL STREET JOURNAL (Feb. 22, 2019 11:07 AM), https://www.wsj.com/articles/you-give-apps-sensitive-personal-information-then-they-tell-facebook-11550851636.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**F. Flo Health's Conduct Violated the Federal Trade Commission ("FTC") Act Prohibiting Unfair or Deceptive Acts or Practices in Commerce**

62. In January 2020, the FTC issued a complaint against Flo Health alleging violations of various privacy-related laws.

63. The FTC's investigation discovered Flo Health disclosed the intimate health information of millions of Flo App users to third parties, such as Facebook, Google, Fabric, AppsFlyer, and Flurry. The investigation also found that Flo Health disclosed its users' intimate health data in the form of Custom App Events to third parties between at least 2016 and 2019.

64. Based on its investigation, the FTC determined that Flo Heath indeed violated privacy of Flo App's users by: disclosing their users' health information to third parties; violating its Privacy Policy by disclosing information beyond non-personally identifiable information, device identifiers, or personal data to third parties; and violating its Privacy Policy by failing to limit third-party use of its users' personal information, and other claims.

65. On January 13, 2012, Flo Health entered a settlement with the FTC over the alleged privacy violations. The proposed settlement, which is now subject to public comment, would require Flo Health to obtain an independent review of its privacy practices and obtain the consent of app users before making further disclosures of their health information. The settlement also prohibits Flo Health from further misrepresenting the purposes for which or to whom it discloses data collected, maintained, used, or disclosed; how much consumers can control these data uses; its compliance with any privacy, security, or compliance program; and how it collects, maintains, uses, discloses, deletes, or protects users' personal information.

## CLASS ALLEGATIONS

66. Pursuant to the Federal Rule of Civil Procedure 23, Plaintiffs, individually and on behalf of all other similarly situated, bring this lawsuit on behalf of themselves and as a class action on behalf of the following Class:

A Nationwide Class of all persons in the United States that used the Flo App between

June 2016 through the present, inclusive (the "Class Period").[20]

67. Excluded from the Class are: (1) any Judge or Magistrate presiding over the class action and members of their families; (2) Defendant and its subsidiaries, parents, successors, predecessors, or any entity in which Defendant has a controlling interest; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors, or assignees of such excluded persons.

68. Members of the Class are so numerous that joinder is impracticable. While the exact number of class members is unknown to Plaintiffs, it is believed that the Class is comprised of millions of members geographically dispersed throughout the United States. The Class is readily identifiable from information and records in the possession of Flo Health, Inc. and third parties.

69. The claims of all class members arise from a common set of alleged facts, i.e., that Flo Health, Inc.shared information about users' periods and pregnancies, and other personal information, with the data analytics divisions of several third-party companies.

70. For each Claim for Relief asserted below, the same legal standards govern resolution of the same operative facts existing across all members of the Class' individual claims. If Defendant is liable to one member of the Class, Defendant is liable to all members of the Class.

71. The Class' claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not limited to, the following:

      a.     Whether Defendant violated Plaintiffs' and Class members' privacy rights;

      b.     Whether Defendant's acts and practices complained of herein would be highly offensive to a reasonable person;

      c.     Whether Defendant's acts and practices amount to a breach of contract;

---

[20] Plaintiffs have defined the Class based on currently available information and hereby reserves the right to amend the definition of the class, including, without limitation, the Class Period.

d.      Whether Defendant's acts and practices amount to a breach of implied

contract;

e.      Whether Defendant was unjustly enriched;

f.      Whether Defendant violated the Stored Communications Act, 18 U.S.C. §

2701, et seq.;

g.      Whether Plaintiffs and the Class members are entitled to equitable relief,

including, but not limited to, injunctive relief, restitution, and disgorgement; and

h.  Whether Plaintiffs and the Class members are entitled to actual, statutory,

punitive, or other forms of damages, and other monetary relief.

72.      Plaintiffs' claims are typical of the claims of the Class, and arise from the same course of conduct undertaken by Flo Health, Inc. against the Class. There are no conflicts between the interests of the named Plaintiffs and the interests of any members of the Class that Plaintiffs seek to represent. The relief Plaintiffs seek is typical of the relief sought for members of the Class.

73.      Plaintiffs will fairly and adequately represent and protect the interests of the Class because of the common injury and interests of the members of the Class and the uniform conduct of Flo Health, Inc. that is, and was, applicable to all members of the Class. Plaintiffs have no interest that is antagonistic to those of the Class, and Defendant has no defenses unique to any Plaintiff. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

74.      This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy, and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

treatment will create economies of time, effort, and expense and promote uniform decision-making

76. Plaintiffs' claims are typical of the claims of the Class, and arise from the same course of conduct undertaken by Flo Health, Inc. against the Class. There are no conflicts between the interests of the named Plaintiffs and the interests of any members of the Class that Plaintiffs seek to represent. The relief Plaintiffs seek is typical of the relief sought for members of the Class.

76. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) not only because common questions of fact and law predominate, but also because a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Flo Health, Inc., and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. Class action status, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

77. Plaintiffs are not aware of any management difficulties which should preclude maintenance of this litigation as a class action. Plaintiffs do not anticipate any difficulty in the management of this action as a class action.

78. Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

79. The applicable statutes of limitation should be tolled as a result of Defendant willingly, knowingly, and actively concealing the facts herein. Thus, Plaintiffs and the Class they represent could not, with due diligence, have discovered the full scope of Defendant's misconduct.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**A. California Law Applies to the Entire Class**

80.  California substantive laws apply to every member of the Class, regardless of where in the United States the Class members reside. Flo Health's Terms of Use states "These Terms of Use (this 'Agreement') is a legal agreement between [users] and Flo Health, Inc."[21]

81.  This agreement states that "[a]ny dispute arising from this Agreement shall be governed by the laws of the State of California without regard to its conflict of law provisions. Sole and exclusive jurisdiction for any action or proceeding arising out of or related to this agreement shall be in an appropriate state or federal court located in San Francisco County, State of California . . . ."[22]

82.  Thereby stating the choice of California law for the resolution of disputes in the agreement, Flo Health concedes that it is appropriate for this Court to apply California law to this dispute. Additionally, California's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class they represent under the Due Process Clause, U.S. CONST. amend. XIV, § 1, and the Full Faith and Credit Clause, U.S. CONST. art. IV, § 1. California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs and Class members, thereby creating state interests to ensure that the choice of California state law is not arbitrary or unfair.

83.  Flo Health maintains a California postal address at 541 Jefferson Avenue, Suite 100, Redwood City, CA 94063-1700 and conducts substantial business in California, such that California has an interest in regulating Defendant's conduct under its laws. Defendant's decision to reside in California and avail itself of California's laws renders the application of California law to the claims herein constitutionally permissible.

84.  The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of

---

[21] *Terms of Use*, FLO HEALTH, INC. (effective Feb. 5, 2020) (emphasis removed), https://flo.health/terms-of-service.
[22] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs and the proposed Class, and California has a greater interest in applying its laws here than any other interested state.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Breach of Contract**
**(On Behalf of Plaintiffs and the Class)**

85.     Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

86.     Plaintiffs and the Class entered into a contract with Defendant by downloading and using the Flo App. By downloading, agreeing to the Terms of Use, and using the Flo App, Plaintiffs agree to abide by Flo Health's Terms of Use ("TOU"). Plaintiffs have fully complied with their obligations under the TOU with regard to their use of Flo Health's product and services.

87.     The TOU states that "[b]y creating an account or accessing or using the App, you acknowledge that you accept and agree to be bound by the terms of this Agreement." Plaintiffs and the Defendant are subject to Flo Health's Privacy Policy, which is incorporated into the TOU.[23]

88.     Flo Health's Privacy Policy states that it only provides users' personal data to third parties when that data "is reasonably necessary to perform their work," which may include "suppl[ying] software applications, web hosting, and other technologies for the App."[24] Flo Health breached the contract because it did not disclose these details and information to "provide services in connection with the App."[25] Flo Health permitted third parties to use this information for any purpose, including for their own benefit like research, development, and targeted advertising that was unrelated to the stated purpose disclosed by the Privacy Policy.

---

[23] *Id.*
[24] *Privacy Policy (archived)*, under *Disclosure of Information, Information We Share with Third Parties*, FLO HEALTH, INC. (effective Aug. 28, 2017), https://flo.health/privacy-policy-archived/aug-28-2017; *Privacy Policy (archived)*, under *Sharing you* [sic] *personal data and information*, FLO HEALTH, INC. (effective May 25, 2018), https://flo.health/privacy-policy-archived/may-25-2018.
[25] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

89.     Flo Health's Privacy Policy stated that any information shared with third parties "exclud[ed] information regarding your marked cycles, pregnancy, symptoms, notes and other information that is entered by you and that you do not elect to share[.]"[26] Flo Health breached the contract as they disclosed users' intimate health data regarding marked cycles, fertility cycles, pregnancy, and other health information in the form of Custom App Events to third parties.

90.     Flo Health's Privacy Policy stated that Flo Health would not disclose "any data related to health" to either of the mobile analytics firms AppsFlyer or Flurry.[27] Flo Health breached the contract as it disclosed its Custom App Events, which contained intimate health data to AppsFlyer and Flurry.

91.     Flo Health's Privacy Policy stated that Flo Health would only provide "non-personally identifiable information," "[p]ersonal Data like device identifiers[,]" or "device identifiers" to Facebook, Google, and Fabric.[28] Flo Health breached their contract with its users because it provided Facebook, Google, and Fabric access to Custom App Events, which conveyed identifiable information and intimate health data, unlike device identifiers.

92.     By disclosing Plaintiffs' and the Class' intimate health data to third parties without their consent, Flo Health has materially breached the terms of its contract with users.

93.     Due to Flo Health's breach of contract, Plaintiffs and the Class they represent have suffered damages in an amount to be determined at trial. In addition, or in the alternative, Plaintiffs and the Class they represent seek damages that will reasonably compensate Plaintiffs and Class members for the harm to their privacy interest. By sharing their intimate health data with third parties without consent, Flo Health invaded Plaintiffs' and the Class' privacy interests. As a result of Flo Health's breach of the TOU and Privacy Policy, Plaintiffs and the Class they represent have suffered damages.

---

[26] *Id.*

[27] *Privacy Policy (archived)*, under *Sharing you* [sic] *personal data and information*, FLO HEALTH, INC. (effective May 25, 2018), https://flo.health/privacy-policy-archived/may-25-2018.

[28] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## SECOND CLAIM FOR RELIEF
### Breach of Implied Contract
### (On Behalf of Plaintiffs and the Class)
### (In the Alternative)

94.     Plaintiffs re-allege and incorporate by reference the preceding allegations of this Complaint with the same force and effect as if fully set forth herein.

95.     Plaintiffs allege this claim in the alternative to Plaintiffs' First Claim for Relief.

96.     Plaintiffs entered into an implied contract with Defendant by downloading and using the Flo App. By using the Flo App, both parties agree to abide by Flo Health's Terms of Use ("TOU"). Plaintiffs and the Class have fully complied with their obligations under the TOU with regard to Plaintiffs' use of Flo Health's product and services.

97.     Defendant solicited and invited potential users and customers such as Plaintiffs and the Class to use the Flo App, promising that their privacy rights would be protected.

98.     Defendant promised its users that Flo Health would only share "certain" personal data with third parties, limited to only the "information that is reasonably necessary to perform their work" in support of the Flo App.[29]

99.     Plaintiffs and the Class, relying on Defendant's promises and assurances, downloaded the Flo App and provided Flo Health with their intimate health data.

100.    In entering into an implied contract, Plaintiffs and the Class reasonably believed that Defendant would make good on its promises, as well as comply with relevant laws and regulations, including privacy laws.

101.    Plaintiffs and the Class reasonably believed that Defendant would not disclose their intimate health data regarding their fertility cycles, lifestyle choices, and romantic relationships with third parties, as stated in Flo Health's Privacy Policy.

---

[29] *Privacy Policy (archived)*, under *Disclosure of Information, Information We Share with Third Parties*, FLO HEALTH, INC. (effective Aug. 28, 2017), https://flo.health/privacy-policy-archived/aug-28-2017; *Privacy Policy (archived)*, under *Sharing you* [sic] *personal data and information*, FLO HEALTH, INC. (effective May 25, 2018), https://flo.health/privacy-policy-archived/may-25-2018.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

102.    Defendant's implied promise not to disclose Plaintiffs' and the Class' intimate

data to third parties is evidenced by, *e.g.*, the representations in Flo Health's TOU and Privacy

Policy set forth herein.

103.    Plaintiffs and the Class would not have downloaded or made use of the Flo App

in the absence of such assurances and promises.

104.    Plaintiffs and the Class fully performed their obligations under the implied

contracts with Defendant.

105.    Defendant breached its implied contract with Plaintiffs and the Class by covertly

collecting and disclosing sensitive personal data for Defendant's own benefit, in violation of its

TOU and Privacy Policy. [30]

106.    By disclosing Plaintiffs' and the Class' intimate health data to third parties

without their consent, Flo Health has materially breached the terms of the implied contract.

107.    Plaintiffs and the Class have suffered damages in an amount to be determined at

trial. In addition, or in the alternative, Plaintiffs and the Class seek damages that will reasonably

compensate them for the harm to their privacy interests.

### THIRD CLAIM FOR RELIEF
**Unlawful Unfair Business Practices In Violation of**
**Bus. &. Prof. Code § 17200, *et seq.***
**(On Behalf of Plaintiffs and the Class)**

108.    Plaintiffs re-allege and incorporate by reference the preceding allegations of this

Complaint with the same force and effect as if fully set forth herein.

109.    California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or

fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]"

Cal. Bus. & Prof. Code. § 17200.

110.    Defendant has conducted the following unlawful activities:

a.      violations of the California Consumers Legal Remedies Act ("CLRA"),

Civil Code section 1770;

---

[30] *Terms of Use*, FLO HEALTH, INC. (effective Feb. 5, 2020), https://flo.health/terms-of-service.

23

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

b.     violations of the California Consumer Privacy Act of 2018 ("CCPA"),
Civil Code section 1798.100(b);

c.     Invasion of Plaintiffs' and Class members' rights of privacy

111.   With respect to Flo Health's violation of the CLRA, Defendant's practices constitute violations of California Civil Code section 1770 in at least the following respects: misrepresenting that the Flow App had characteristics, benefits, or uses that it does not have (preventing unauthorized access and disclosure of users' personal information when in fact it did not); misrepresenting that the Flow App maintained a particular standard, quality, or grade (preventing unauthorized access and disclosure of users' personal information when in fact it does not); advertising the Flo App with an intent not to sell it as advertised (advertising it as preventing unauthorized access and disclosure of users' personal information when in fact it does not); and misrepresenting that the Flow App, its use, collection, storage, and dissemination of data was consistent with its representations regarding the same (preventing unauthorized access and disclosure of users' personal information when in fact does not).

112.   With respect to Flo Health's violation of the CCPA, a "business that collects a consumer's personal information shall, at or before the point of collection, inform consumers as to the categories of personal information to be collected and the purposes for which the categories of personal information shall be used. A business shall not collect additional categories of personal information or use personal information collected for additional purposes without providing the consumer with notice consistent with this section." Cal. Civ. Code § 1798.100(b).

113.   The CCPA defines "personal information" as any "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household." Cal. Civ. Code § 1798.140(o)(1). Personal information includes, but is not limited to, "identifiers such as . . . unique personal identifier[s], online identifier[s], . . . other similar identifiers[,]" Cal. Civ. Code § 1798.140(o)(1)(A), "[i]nternet or other electronic network activity information, including, but

not limited to, . . . information regarding a consumer's interaction with an internet website, application, or advertisement[,]" Cal. Civ. Code § 1798.140(o)(1)(F) and "[g]eolocation data[,]" Cal. Civ. Code § 1798.140(o)(1)(G).

114.    As set forth in detail in this Complaint, Flo Health collected Plaintiffs' and the Class' "personal information" as defined in the CCPA, and failed to inform them of the entire extent of personal information to be collected and disclosed to third parties, and all of the purposes for which users' personal information was to be used, at or before the point of collection. As a result, Flo Health violated the CCPA.

115.    In addition to constituting "unlawful conduct" in violation of the above-noted laws, Flow Health's business practices also constitute unfair practices in violation of California's UCL because Flo Health's practices violate an established public policy, and/or the practice is immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiffs and Class. The harm caused by Defendant's conduct outweighs any potential benefits attributable to such conduct, and there were reasonably available alternatives to further Defendant's legitimate business interests, other than Defendant's conduct as described herein.

116.    By willfully disclosing Plaintiffs' and the Class' personal information, without authorization, Defendant engaged in fraudulent businesses practice that was and is likely to deceive reasonable consumers.

117.    A reasonable person would not have agreed to use the Flo Health App had she known the truth about Defendant's practices as alleged herein. By withholding material information regarding their practices, Defendant convinced customers to use the Flo App and to entrust it with their personal information. Consequently, Defendant's conduct also was "fraudulent" within the meaning of the UCL.

118.    Because of Defendant's violations of the UCL, Plaintiffs and the Class have suffered injury-in-fact and have lost money or property. Plaintiffs and the Class are entitled to restitution, disgorgement, an injunction, declaratory judgment, and other equitable relief for such unlawful practices to prevent future harm for which there is no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
### Invasion of Privacy and Violation of the California Constitution, Art. 1, § 1
### (On Behalf of Plaintiffs and the Class)

119.   Plaintiffs re-allege and incorporate by reference the preceding allegations of this Complaint with the same force and effect as if fully set forth herein.

120.   Plaintiffs and the Class have legally protected privacy interests in their personal information, which was shared with and recorded in the Flo App, and they are entitled to the protection of their information against unauthorized access and disclosure.

121.   Plaintiffs and the Class members reasonably expected that the intimate data they shared with Flo Health would be protected and secure from unauthorized disclosures or disclosure for improper purposes.

122.   Defendant unlawfully invaded the privacy rights of Plaintiffs and the Class by (a) failing to adequately secure their intimate health information from disclosure to unauthorized parties and for improper purposes; (b) disclosing their intimate health information to unauthorized parties in a matter that is highly offensive to a reasonable person; and (c) disclosing their intimate health information to unauthorized parties without their informed and consent.

123.   In failing to adequately secure its users' intimate health data, Flo Health disregarded Plaintiffs' and the Class' reasonable expectation of privacy under the circumstances. Defendant knew or should have known that their substandard security and data disclosures measures and practices were highly invasive and offensive to a reasonable person in the same positions as Plaintiffs and the Class.

124.   Defendant violated Plaintiffs' and Class members' right to privacy under California law, including, but not limited to, Article 1 Section 1 of the California Constitution and the CCPA.

125.   As a direct and proximate result of Defendant's unlawful invasions of privacy, Plaintiffs' and Class' reasonable expectation of privacy have been trampled upon, resulting in

injuries, from which they are entitled to appropriate relief, including actual, injunctive, and punitive.

**FIFTH CLAIM FOR RELIEF**
**Stored Communications Act ("SCA")**
**18 U.S.C. § 2702, *et seq.***
**(On Behalf of Plaintiffs and the Class)**

126.   Plaintiffs re-allege and incorporate by reference the preceding allegations of this Complaint with the same force and effect as if fully set forth herein.

127.   The SCA provides that a person "providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service[.]" 18 U.S.C. § 2702(a)(1).

128.   "Electronic communication" is broadly defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce[.]" 18 U.S.C. § 2510(12).

129.   "Electronic storage" is defined as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and any storage of such communication by an electronic communication service for purposes of backup protection of such communication[.]" 18 U.S.C. § 2510(17)(A)-(B)

130.   "[E]lectronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications[.]" 18 U.S.C. § 2510(15).

131.   "[P]erson" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation[.]" 18 U.S.C. § 2510(6).

132.   Flo Health, as a corporation, is a person as defined under 18 U.S.C. § 2510(6).

133.   Flo Health provides a service that allows Plaintiffs and Class members to send and receive electronic communications from Flo Health, fellow app users, and medical experts.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Flo Health provides this service "to the public" because Flo Health makes its Flo App freely available to millions of individuals, including Plaintiffs and the Class they represent.

134.    Plaintiffs and the Class reasonably expected that Flo Health's services did not include disclosing their "electronic communications," *i.e.*, their data (as broadly defined), based, in part, on Defendant's failure to provide *any* disclosures or obtain consent for permission to do so, as well as Flo Health's affirmative misrepresentations that it would not disclose this information.

135.    Defendant stored Plaintiffs' and the Class' electronic communications on external servers and intentionally disclosed them to third parties, disregarding of Plaintiffs' and Class members' privacy rights, to the benefit of Defendant.

136.    Flo Health's actions, at all relevant times, were intentional, willful, and knowing.

137.    As a result of Defendant's violations of the SCA, Plaintiffs and Class members have suffered harm and injury, including, but not limited to, the invasion of their privacy rights.

138.    Pursuant to 18 U.S.C. § 2707, Plaintiffs and the Class are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the sum of the actual damages suffered by Plaintiffs and the Class and any profits made by Defendant as a result of the violation, but in no case less than the minimum statutory damages of $1,000 per person; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

**SIXTH CLAIM FOR RELIEF**
**California Confidentiality of Medical Information Act ("CMA")**
**Civil Code Section 56.06.**
**(On Behalf of Plaintiffs and the Class)**

139.    Plaintiffs re-allege and incorporate by reference the preceding allegations of this Complaint with the same force and effect as if fully set forth herein

140.    Defendant is a provider of health care under California Civil Code Section 56.06, subdivision (b), because it offers software to consumers that is designed to maintain medical information for the purposes of allowing its users to manage their information or for the diagnosis, treatment, or management of a medical condition.

141.    Specifically, the Flo App was designed for users to store, email, and print information relating to their reproductive health, such as ovulation and menstrual cycles, and/or for the diagnoses, treatment, or management of infertility, or for those users trying to become pregnant. Defendant must therefore comply with CMA, subdivision (b), which required Flo Health to maintain the same standards of confidentiality required of a provider of health care, with respect to medical information it maintains on behalf of users.

142.    Defendant violated California Civil Code section 56.06 because it disclosed to third parties, without consent, the intimate health data of Plaintiffs and the Class, including physical and emotional health, family planning decisions, romantic and sexual lifestyle.

143.    Defendant did not maintain the standards of confidentiality required of a provider of health care in violation of California Civil Code section 56.36 subdivisions (b) and (c) through the unauthorized disclosure of Plaintiffs' and Class members' intimate health data.

**SEVENTH CLAIM FOR RELIEF**
**Violation of California Civil Code Section 1750**
**(On Behalf of Plaintiffs and the Class)**

144.    Plaintiffs re-allege and incorporate by reference the preceding allegations of this Complaint with the same force and effect as if fully set forth herein

145.    In violation of California Civil Code § 1750, *et seq.*, Defendant has engaged and is engaged in unfair and deceptive acts and practices in the course of its interactions with Plaintiffs and the Class they represent.

146.    At all relevant times, Plaintiffs and each proposed Class Member was a "[c]onsumer," as that term is defined in Cal. Civ. Code § 1761(d).

147.    At all relevant times, Defendant's online services constituted "[s]ervices," as that term is defined in Cal. Civ. Code § 1761(b).

148.    At all relevant times, Defendant was a "[p]erson," as that term is defined in Cal. Civ. Code § 1761(c).

149. At all relevant times, Plaintiffs' and each proposed Class Member's use of Defendant's app and the implementation of Custom App Events was a "[t]ransaction," as that term is defined in Cal. Civ. Code § 1761(e).

150. Defendant's practices, acts, policies, and course of conduct violated the CLRA in that Defendant represented that its app and website services have characteristics, uses, and benefits of privacy, which it did not have, or do, in violation of § 1770(a)(5) of the CLRA.

151. Defendant's practices, acts, policies, and course of conduct violated the CLRA in that Defendant represented that a transaction confers or involves rights, remedies, or obligations which it does not have, in violation of § 1770(a)(14) of the CLRA

152. As previously described in detail, Defendant represented that it would render its service to Plaintiffs and the Class in accordance with the governing User Agreement and Privacy Policy, but later failed to do so, in violation of § 1770(a)(16) of the CLRA.

153. Plaintiffs and the Class relied on Defendant's representations that it would protect their privacy, which included their intimate health data.

154. Plaintiffs and the Class suffered the damages as a result of the Defendant's conduct.

155. Plaintiffs and the Class are entitled to injunctive relief as well as actual and punitive damages.

### EIGHTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

156. Plaintiffs re-allege and incorporate by reference the preceding allegations of this Complaint with the same force and effect as if fully set forth herein

157. Plaintiffs and the Class allege this claim, in the alternative to their First Claim for Relief.

158. Plaintiffs and the Class conferred a benefit upon Flo Health by providing it with intimate health data that Defendant collected from Plaintiffs and the Class. Without authorization, consent, or compensation to Plaintiffs or the Class, Flo Health intentionally

misused, mishandled, and disclosed this data to third parties, conferring economic (including monetary compensation) and other benefits to Flo Health, to the exclusion and at the expense of Plaintiffs and the Class.

159.   Flo Health unjustly retained and has continued to retain those benefits at the expense of Plaintiffs and the Class. Plaintiffs and the Class have suffered injury, in an amount to be determined at trial.

160.   It would be inequitable for Defendant to retain the benefits, including any economic benefit, it received for disclosing Plaintiffs' and the Class' sensitive health information, without their consent.

161.   Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiffs and the Class, all unlawful or inequitable proceeds it received, and such other relief as the Court may deem just and proper.

### NINTH CLAIM FOR RELIEF
**Civil Code Section 56.101**
**(On Behalf of Plaintiffs and the Class)**

162.   Plaintiffs re-allege and incorporate by reference the preceding allegations of this Complaint with the same force and effect as if fully set forth herein

163.   California Civil Code section 56.101, subdivision (a) requires that every provider of health care "who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein."

164.   Defendant failed to maintain, preserve, and store medical information in an appropriate manner that preserves the confidentiality of the users' information and private data, because it disclosed to third parties Plaintiffs' and Class members' personal, intimate health data without consent, including information concerning physical and emotional health, family planning, and romantic lifestyle, as well as their interests in making intimate personal decisions or conducting personal activities.

165. Defendant's failure to maintain, preserve, and store medical information and data in a manner that preserves the confidentiality of the information was, at the least, negligent and violates California Civil Code section 56.36 subdivisions (b) and (c).

## TENTH CLAIM FOR RELIEF
### Civil Code Section 56.10
### (On Behalf of Plaintiffs and the Class)

166. Plaintiffs re-allege and incorporate by reference the preceding allegations of this Complaint with the same force and effect as if fully set forth herein

167. California Civil Code section 56.10, subdivision (a), prohibits a health care provider from disclosing medical information without first obtaining an authorization, unless a statutory exception applies.

168. Defendant disclosed medical information of its users without first obtaining authorization when it disclosed intimate health data, belonging to Plaintiffs and the Class, without consent. No statutory exception applies. As a result, Defendant violated California Civil Code section 56.10, subdivision (a).

169. Defendant negligently disclosed medical information in violation of California Civil Code section 56.36, subdivisions (b) and (c), through the unauthorized disclosure of intimate health data belonging to Plaintiffs and the Class.

## ELEVENTH CLAIM FOR RELIEF
### Intrusion upon Seclusion
### (On Behalf of Plaintiffs and the Class)

170. Plaintiffs re-allege and incorporate by reference the preceding allegations of this Complaint with the same force and effect as if fully set forth herein

171. Plaintiffs and the Class reasonably expected that their personal and intimate data would be protected and secure from unauthorized disclosures to third parties, and/or disclosed for any improper purpose.

172. Defendant intentionally intruded on and into Plaintiffs' and the Class' solitude, seclusion, or private affairs by intentionally designing the Flo App to obtain, record, and store their intimate health data, and to thereafter covertly disclose the same to third parties.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

173.    Intrusions such as these are highly offensive to a reasonable person. This is evidenced by, inter alia, California Supreme Court precedent, legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles decrying these very types of intrusions.

174.    Further, the full extent of Flo Health's intrusion may not ever be fully known, as the health data shared was not subject to any claw-back provision or any other restrictions preventing the resale or disclosure beyond the initial third-party recipient.

175.    Plaintiffs and the Class were harmed by the invasion into their intimate data as detailed throughout this Complaint.

176.    Defendant's actions and conduct were a substantial factor in causing the harm suffered by Plaintiffs and the Class.

177.    To prevent further harm to Plaintiffs and the Class, Plaintiffs and the Class seek injunctive relief, in the form of Defendant's cessation of tracking practices in violation of state law, and the destruction of all personal data obtained in violation of state law.

178.    Plaintiffs and the Class are entitled to injunctive relief as well as actual and punitive damages.

**TWELFTH CLAIM FOR RELIEF**
**Negligent Misrepresentation**
**Cal. Civ. Code §§ 1709-1710**
**(On Behalf of Plaintiffs and the Class)**

179.    Plaintiffs re-allege and incorporate by reference the preceding allegations of this Complaint with the same force and effect as if fully set forth herein

180.    Defendant promised and assured Plaintiffs and the Class that the intimate health data it collected and stored would be safe from disclosure. Instead of honoring its representations, Defendant shared this data with third parties, and allowed them to do with it what they pleased.

181.    Flo Health materially misrepresented the manner in which it would collect, record, and disclose the intimate health data of its user. This misrepresentation influenced Plaintiffs and the Class to download, use, and continue use of the Flo App.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

182. Defendant knew or should have known that its misrepresentations were false, or Defendant made the misrepresentations without knowledge of their truth or veracity.

183. Plaintiffs and the Class justifiably, and to their detriment, relied on Defendant's misrepresentations, and, as a proximate result thereof, have and will continue to suffer damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, respectfully ask the Court for a judgment that:

A. Certifies this case as a class action on behalf of the proposed Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), and appoints Plaintiffs as class representatives and their attorneys as Class Counsel;

B. Awards Plaintiffs and each member of the Class treble the amount of damages actually sustained by reason of Flo Health, Inc.'s violations alleged herein, plus the reasonable costs of this action including attorneys' fees;

C. Awards declaratory relief against the Defendant;

D. Awards such injunctive relief and other equitable relief as the Court deems just and proper;

E. Awards Plaintiffs and the Class they represent statutory, actual, compensatory, consequential, punitive, and nominal damages, as well as restitution and/or disgorgement of profits unlawfully obtained;

F. Awards Plaintiffs and the Class members pre-judgment and post-judgment interest;

G. Awards Plaintiffs and the Class members reasonable attorneys' fees, costs, and expenses; and

H. Awards such other relief the Court deems reasonable and appropriate.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local Rule 3-6, Plaintiffs and the Class they represent request a jury trial for all issues so triable.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Dated: April 26, 2021

KIRBY McINERNEY LLP

/s/ Robert J. Gralewski, Jr.
Robert J. Gralewski, Jr. (#196410)
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 398-4340
Fax: (212) 751-2540
Email: bgralewski@kmllp.com

- and –

William D. Harris II (*pro hac vice* forthcoming)
Harris Legal Advisors LLC
605 N. High Street, Ste. 146
Columbus, OH 43215
Email: will@harrislegaladvisors.com
Phone: (614) 504-3350

Michael E. Jacobs (*pro hac vice* forthcoming)
Hinkle Shanor LLP
P.O. Box 2068
Santa Fe, NM 87504
Email: mjacobs@hinklelawfirm.com
Phone: (505) 982-4554

Kent M. Williams (*pro hac vice* forthcoming)
Williams Law Firm
1632 Homestead Trail
Long, Lake MN 55356
Email: williamslawmn@gmail.com
Phone: (612) 940-4452

*Counsel for Leah Ridgeway and Autumn Meigs*